Matthew Strugar, SBN 232951
Law Office of Matthew Strugar
3435 Wilshire Blvd, Suite 2910
Los Angeles, CA 90010
323-696-229
matthew@matthewstrugar.com

Attorney for Proposed Intervenor and Proposed Amicus Curiae People for the Ethical Treatment of Animals

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CITY OF SAN DIEGO, a municipal corporation, | Case No.: 3:23-cv-01919-W-DEB |
| Plaintiff and Counterdefendant, | **PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF OBJECTING TO THE PROPOSED SETTLEMENT, OR, IN THE ALTERNATIVE, FOR LEAVE TO FILE BRIEF OF AMICUS CURIAE** |
| v. | |
| SEA WORLD LLC, a Delaware limited liability company, FKA Sea World, Inc.; and DOES 1-50, inclusive | |
| Defendant and Counterclaimant. | Date: February 24, 2025<br>Judge: Hon. Thomas J. Whelan<br>Courtroom Number: 3C<br><br>Complaint Filed: Sept. 19, 2023 |

People for the Ethical Treatment of Animals, Inc. ("PETA") submits this memorandum in support of its motion to intervene for the limited purpose of objecting to the proposed settlement announced by counsel for Sea World, LLC ("SeaWorld") and the City of San Diego ("City") on or about December 10, 2024.[1] In the alternative, PETA requests that the Court permit PETA to file its objections as an amicus curiae.

## FACTUAL BACKGROUND

PETA is a Virginia non-stock corporation and a federally registered 501(c)(3) tax-exempt animal protection charity. Since its founding in 1980, PETA has worked to establish and protect the rights of all animals. With millions of members and supporters worldwide, including more than 6,000 members in the City of San Diego, PETA is the largest animal rights organization in the world. PETA is guided by the principle that animals are not ours to experiment on, eat, wear, use for entertainment, or abuse in any other way.

Several of PETA's campaigns over the past three decades have focused (and continue to focus) on the suffering of animals at SeaWorld, including its San Diego location. Among many other efforts, in 2011, PETA filed a lawsuit against SeaWorld, challenging SeaWorld's confinement of five wild-caught orcas (including three at SeaWorld's San Diego park) in violation of the 13th Amendment to the U.S. Constitution. *See Tilikum et al. v. Sea World Parks & Entertainment Inc.,* 842 F. Supp. 2d 1259 (S.D. Cal. 2012). PETA became a shareholder in SeaWorld Entertainment, Inc. (n/k/a United Parks & Resorts, Inc.) in 2013 and has advocated

---

[1] *See, e.g.,* Danielle Dawson, *SeaWorld reaches $8.8M settlement with San Diego in lawsuit over unpaid rent*. December 10, 2024. Fox 5/KUSI. *Available online* at https://fox5sandiego.com/news/local-news/seaworld-reaches-8-8m-settlement-with-san-diego-in-lawsuit-over-unpaid-rent/

1

People for the Ethical Treatment of Animals, Inc.'s Memorandum of Points and Authorities in Support of Motion to Intervene for the Limited Purpose of Objecting to the Proposed Settlement
CASE NO.: 3-23-CV-01919-W-DEB

for the animals held captive at SeaWorld at each shareholder meeting in the more than a decade since.[2] In 2015, PETA advocated against SeaWorld San Diego's proposed expansion of its orca tanks, which would have facilitated SeaWorld's captive orca breeding program. Following PETA's advocacy, the California Coastal Commission conditioned its approval of the tank expansion on an orca breeding ban, which ended SeaWorld's captive orca breeding program. In 2016, PETA launched a campaign to free Corky, one of the orcas confined at SeaWorld San Diego, and the longest-held captive orca in the world. That campaign continues to this day; in December 2024, PETA organized a run from Los Angeles to San Diego—representing the distance that wild orcas swim in a single day in nature—to advocate for Corky's release.[3] PETA hosts a website, https://www.seaworldofhurt.com, devoted entirely to its advocacy for the animals at SeaWorld. One of the lesson plans offered through PETA's TeachKind division, which provides educational materials for teachers, schools, and students, is entitled "SeaWorld Kills: Imprisonment in Amusement Parks", and teaches students about the lives of orcas kept in amusement parks, and why it is cruel to use them for entertainment.[4]

---

[2] *See, e.g.,* PETA Staff, PETA Becomes Part Owner of SeaWorld, *available online at* https://www.peta.org/blog/peta-becomes-part-owner-seaworld/

[3] *See, e.g.,* People for the Ethical Treatment of Animals, *Video: 27-Hour, 150-Mile 'Run for Corky's Freedom' Pushes for Orca's Release from SeaWorld, available online at* https://www.peta.org/media/news-releases/video-27-hour-150-mile-run-for-corkys-freedom-pushes-for-orcas-release-from-seaworld/ETA

[4] *See, e.g.,* People for the Ethical Treatment of Animals*, SeaWorld Kills: Imprisonment in Amusement Parks (Grades 6-12)*, *available online at* https://www.peta.org/teachkind/lesson-plans-activities/seaworld-exposed-grades-6-12

For the reasons explained below, PETA seeks to intervene for the limited purpose of being permitted to file its objections to the proposed settlement, a copy of which is attached to its motion to intervene.

## ARGUMENT

Rule 24 of the Federal Rules of Civil Procedure provides a mechanism for a nonparty to intervene into ongoing litigation, either permissively or as a matter of right. Fed. R. Civ. P. 24(a)-(b). "Rule 24 traditionally has received a liberal construction in favor of applications for intervention." *Washington State Bldg. and Const. Trades Council, AFL-CIO v. Spellman,* 684 F.2d 627, 629-30 (9th Cir. 1982) (citing 7A C. Wright & A. Miller, Federal Practice and Procedure s. 1904 (1972)). As the Ninth Circuit has recognized, "[b]y allowing parties with a *practical* interest in the outcome of a particular case to intervene, [courts] often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court." *U.S. v. City of Los Angeles, Cal.,* 288 F.3d 391, 398 (9th Cir. 1982) (internal quotation omitted).

A motion to intervene may be granted for a limited purpose, such as objecting to a settlement. *See, e.g., In re Novatel Wireless Securities Litigation,* Civil No. 08cv1689 AJB (RBB), 2014 WL 2858518, at *7 (S.D. Cal. June 23, 2014) (allowing intervention for the limited purpose of receiving objections to a settlement into the record); *Van Hoomissen v. Xerox Corp.,* 497 F.2d 180, 181 (9th Cir. 1974) ("The district court's discretion, at least under Rule 24(b), to grant or deny an application for permissive intervention includes discretion to limit intervention to particular issues"); *see also, e.g., Harris v. Pemsley,* 820 F.2d 592, 593 (3rd Cir. 1987) (noting that limited intervention is appropriate where "third parties can contribute to the court's understanding of the consequences of the settlement proposed by the

3

PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF OBJECTING TO THE PROPOSED SETTLEMENT
CASE NO.: 3-23-CV-01919-W-DEB

parties"); *Kirkland v. New York State Dep't of Corr. Servs.,* 711 F.2d 1117, 1124 (2d Cir. 1983) (affirming district court's ruling that "the intervenors are permitted to intervene for the sole purpose of objecting to the settlement"). The Court should grant this motion and permit PETA to intervene for the limited purpose of filing its objections to the proposed settlement.

### A.   PETA Satisfies the Requirements for Permissive Intervention

Intervention is warranted under the permissive intervention provisions of Rule 24(b)(1)(B), which provides, in pertinent part, that a party should be allowed to intervene by permission when that party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B); *see also Rapp v. NaphCare Inc.,* Case No. 3:21-cv-0500-DGE, 2024 WL 4644703 at *2 (W.D. Wash. Oct. 31, 2024) (describing how requirements for intervention are modified when intervention is for a limited purpose); *Beckman Indus., Inc. v. International Ins. Co.,* 966 F.2d 470, 472 (9th Cir. 1992) (rejecting argument that "Rule 24(b) only permits intervention for the purpose of litigating a claim on the merits", and recognizing that permissive intervention may be authorized for more limited purposes, such as challenging protective orders). Ultimately, a grant of permissive intervention is "committed to the broad discretion of the district court." *Orange v. Air Cal.,* 799 F.2d 535, 539 (9th Cir. 1986).

A permissive intervention application requires the court to consider similar factors as does an application for intervention as of right.[5]   *See, e.g., Perry v.*

---

[5] Those factors include: (1) the applicant asserts a significantly protectable interest relating to the property or transaction that is the subject of the action; (2) the applicant's interest is not adequately represented by the parties to the action; (3) disposition of the action without intervention will, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's motion

4

PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF OBJECTING TO THE PROPOSED SETTLEMENT
CASE NO.: 3-23-CV-01919-W-DEB

*Proposition 8 Official Proponents,* 587 F.3d 947, 955 (9th Cir. 2009)(identifying factors including "the nature and extent of the intervenors' interest" and "whether the intervenors' interests are adequately represented by other parties"); *Spangler v. Pasadena City Bd. of Educ.,* 552 F.2d 1326, 1329 (9th Cir. 1977) (identifying relevant factors a court may consider in making its discretionary decision regarding permissive intervention). All well-pleaded, nonconclusory allegations in the motion to intervene are to be taken as true "absent sham, frivolity, or other objections", *Sw. Ctr. For Biological Diversity v. Berg,* 268 F.3d 810, 820 (9th Cir. 2001), and the requirements should be construed "broadly, in favor of the applicant for intervention." *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1995) (*abrogated on other grounds by Wilderness Soc. V. U.S. Forest Service,* 630 F.3d 1173, 1178 (9th Cir. 2011). The relevant factors each weigh in favor of permitting intervention here.

    First, PETA—acting on its own behalf, and on behalf of its more than 6,000 City of San Diego members—has a significant interest in having a meaningful opportunity to voice its objections concerning the proposed settlement before it is finalized. As explained in further detail in PETA's objections, the proposed settlement is functionally equivalent to the expenditure of over $3 million dollars in public funds—funds which, if collected, would be deposited in the City of San Diego's General Fund and spent through the legislative budget process, which includes "at least one public hearing", among multiple other opportunities for public input. *See* City of San Diego Charter, Art. VII, Sec. 69; *see also id.* at Art. III, Sec. 11.1 (prohibiting the City Council from delegating its legislative "power or

---

is timely. *Sw. Ctr. For Biological Diversity v. Berg,* 268 F.3d 810, 817 (9th Cir. 2001).

5

PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF OBJECTING TO THE PROPOSED SETTLEMENT
CASE NO.: 3-23-CV-01919-W-DEB

responsibility which they were elected to exercise in the adoption of any ordinance or resolution which raises or spends public monies"). These millions of dollars are effectively being funneled to a private entertainment company in exchange for admission coupons which will invariably cost their unfortunate recipients far more than the price of admission to SeaWorld to redeem. Visitors to SeaWorld are, at best, deceived, and at worst, desensitized to the suffering of intelligent animals, some of whom have been held captive at SeaWorld for decades. As an advocate for those animals, and as a representative of its San Diego members and supporters, PETA has a significant, protectable interest in at least being heard with respect to such a wasteful, clandestine expenditure of public funds, which will harm its San Diego members and directly undermine its efforts to advocate for animals at SeaWorld. *See, e.g., In re Novatel Wireless Securities Litigation,* 2014 WL 2858518, at *5 ("There is not any clear definition of the nature of the 'interest relating to the property or transaction that is the subject of the action' that is required for intervention of right"); *U.S. v. City of Los Angeles, Cal.,* 288 F.3d 391, 398 (9th Cir. 2002) ("The interest test is not a clear-cut or bright-line rule, because no specific legal or equitable interest need be established.") (cleaned up).

Second, the existing parties do not adequately represent PETA's interests. *See In re Novatel Wireless Securities Litigation,* 2014 WL 2858518, at *6 (noting that "[t]his requirement is satisfied if the applicant shows that representations of [its] interests *may be* inadequate and the burden of making that showing is minimal."). By publicizing limited elements of the settlement as if it were already final, apparently in an effort to secure favorable publicity for SeaWorld, the City and SeaWorld have both demonstrated a troubling lack of concern for the public's interest in ensuring that scarce public dollars are not spent to subsidize private

entertainment companies' marketing campaigns—especially given that the City is facing a $258.2 million dollar structural deficit and will face painful cuts in the coming fiscal year.[6]

Third, PETA's interests will be impaired if it is not permitted to intervene and object before the proposed settlement is finalized, after which PETA and other members of the public will lose their ability to meaningfully object or attempt to influence the terms of the final settlement. *See, e.g., Home Ins. Co. v. Liberty Mut. Ins. Co.*, No. 87 CIV. 0675, 1990 WL 188925, at *5 (S.D.N.Y. Nov. 20, 1990) (the measure of whether an interest is impaired "is not one of res judicata but simply the degree to which the [intervenor] may be 'practically harmed' by a judgment in [the] pending action"). Having disclosed its intention to effectively direct millions of dollars of public funds towards SeaWorld coupons for select constituencies, the City is obligated to inform members of the public of the full terms of the settlement so that they can evaluate whether it is a sound use of public dollars (it is not) and at least be heard before the settlement is finalized. The City has offered no indication that it intends to do either of these things, whether at a City Council meeting or otherwise. Moreover, PETA's and its members' interests in advocating against SeaWorld's abuse of animals will be impaired if the City spends millions of dollars subsidizing a misleading marketing campaign for SeaWorld that wrongly presents SeaWorld as an educational or social services organization, rather than a private entertainment company whose primary business model is the exploitation of and infliction of cruelty to orcas, dolphins, and other sea animals by confining them to barren tanks and denying them all that is natural to them. *See* San Diego City Charter,

---

[6] *See* The City of San Diego, *Fiscal Year 2026-2030 Five Year Financial Outlook* at p. 8 (Table 1.1), *available online* at fy2026-2030-five-year-financial-outlook-and-attachments-general-fund.pdf

Sec. 40 (the City Attorney is duty bound to prevent the misapplication of funds, fraud, and corruption).

Finally, this motion is timely. PETA first learned of the proposed settlement in news releases that were circulated beginning on December 10, 2024.[7] This motion is being filed within weeks after PETA first learned of the settlement, quickly after the year-end holiday period, and well in advance of the January 31, 2025, Settlement Disposition Conference. *Glass v. UBS Fin. Serv., Inc.,* No. C–06–4068 MMC, 2007 WL 474936, at *3 (N.D. Cal. Jan 17, 2007) ("Where a proposed intervenor seeks to intervene for purposes of objecting to a proposed settlement, timeliness generally is measured from the date the proposed intervenor received notice that the proposed settlement was contrary to its interest."). Merely allowing PETA an opportunity to voice its concerns and receiving PETA's objections to the proposed settlement into the record would not cause any delays or prejudice the City or SeaWorld in any way. *See In re Novatel Wireless Securities Litigation,* 2014 WL 2858518, at *4.

For the reasons explained above, the Court should permit PETA to intervene in this matter for the limited purpose of filing its objections with the Court.

### B.   PETA Should Alternatively Be Granted Amicus Curiae Status

Should PETA's motion to intervene be denied, PETA respectfully requests that the Court grant it amicus curiae status and consider its objections on that basis. *See, e.g., Marisol A. ex. Rel Forbes v. Giuliani,* 185 F.R.D. 152, 161 (S.D.N.Y. 1999) (granting a nonparty amicus status to object to a class action settlement). This Court has the inherent authority and "broad discretion" to allow participation of amici

---

[7] *See, e.g.,* Danielle Dawson, *SeaWorld reaches $8.8M settlement with San Diego in lawsuit over unpaid rent.* December 10, 2024. Fox 5/KUSI. *Available online at* https://fox5sandiego.com/news/local-news/seaworld-reaches-8-8m-settlement-with-san-diego-in-lawsuit-over-unpaid-rent/

curiae. *See Hoptowit v. Ray,* 682 F.2d 1237, 1260 (9th Cir. 1982), *abrogated on other grounds by Sandin v. Conner,* 515 U.S. 472 (1995); *In re Roxford Foods Litig.,* 790 F. Supp. 987, 997 (E.D. Cal. 1991).  There are "no strict prerequisites that must be established before qualifying for amicus status", *WildEarth Guardians v. Haaland,* 561 F. Supp.3d 890, 905 (C.D. Cal. 2021) (citation omitted), and district courts "frequently welcome amicus briefs from non-parties concerning legal issues" such as the proposed settlement, which will have "potential ramifications beyond the parties directly involved[.]" *Sonoma Falls Developers, LLC v. Nev. Gold & Casinos, Inc.,* 272 F. Supp.2d 919, 925 (N.D. Cal. 2003) (citations omitted).

     As explained above, permitting PETA to file its objections will not prejudice the City or SeaWorld in any way, and may benefit them by prompting them to release more complete information concerning the proposed settlement to the public, and offering an opportunity for the public to comment on its terms before it is finalized. Having voluntarily and aggressively publicized the material terms of their proposed settlement, the City and SeaWorld cannot claim that they should be immune from public comment and input, particularly in light of the unusual terms of the settlement at issue here.  Accordingly, if the Court denies PETA's motion to intervene it should grant PETA leave to file its objections to the proposed settlement as an amicus curiae.

## CONCLUSION

     For the foregoing reasons, the Court should grant PETA's motion to intervene for the purpose of objecting to the proposed settlement, or, in the alternative, allow PETA to submit its objections as an amicus curiae.

9

PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF OBJECTING TO THE PROPOSED SETTLEMENT
CASE NO.: 3-23-CV-01919-W-DEB

Dated:    January 13, 2025          /s/ Matthew Strugar
                                    Matthew Strugar
                                    Attorney for Proposed Intervenor
                                    and Proposed Amicus Curiae

10

PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF OBJECTING TO THE PROPOSED SETTLEMENT
CASE NO.: 3-23-CV-01919-W-DEB